Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4493 | **DATE** | 11/27/2001 |
| **CASE TITLE** | Michael W. Minor et al. Vs. Charles T. Albright et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants move to dismiss counts II, III, IV, V, VII, VIII, IX and XII for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Defendants' motion is granted with respect to counts III, V, VII, IX and denied with respect to counts II, IV, VIII and XII. Status hearing set for December 19, 2001 at 9:45am.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 2 8 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 20 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | 01 NOV 27 PM | date mailed notice | |
| WAH | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL W. MINOR, NEILL D. )
INGERSLEW and SHIRLEY A. )
INGERSLEW, )
)
Plaintiffs, )
)
vs. ) No. 01 C 4493
)
CHARLES T. ALBRIGHT, JOYCE )
ALBRIGHT and WIT POSTAL )
LOGISTICS, INC., )
)
Defendants. )

DOCKETED
NOV 2 8 2001

## MEMORANDUM OPINION AND ORDER

Plaintiffs Michael Minor (Minor) and Neill Ingerslew (Ingerslew), individually and in their capacities as shareholders of WIT Postal Logistics, Inc. (WIT), and Shirley Ingerslew, filed a twelve-count complaint against defendants Charles Albright (Albright) and Joyce Albright, and WIT, alleging breach of contract, breach of fiduciary duty, fraud and violations of the Illinois Business Corporations Act (IBCA).[1] Defendants move to dismiss counts II, III, IV, V, VII, VIII, IX and XII for failure to state a claim under Fed.R.Civ.P. 12(b)(6). For the

---

[1]The counts allege as follows:
I. Breach of employment agreement (Minor v. WIT)
II. Breach of employment agreement (Ingerslew v. WIT)
III. Violation of the IBCA (Minor v. WIT and the Albrights)
IV. Breach of fiduciary duty (Minor v. the Albrights)
V. Breach of implied covenant of good faith and fair dealing (Minor v. WIT)
VI. Fraud (Minor v. WIT and Mr. Albright)
VII. Violation of the IBCA (Ingerslew v. WIT and the Albrights)
VIII. Breach of fiduciary duty (Ingerslew v. the Albrights)
IX. Breach of implied covenant of good faith and fair dealing (Ingerslew v. WIT)
X. Fraud (Ingerslew v. WIT and Mr. Albright)
XI. Breach of contract (Ms. Ingerslew v. WIT)
XII. Breach of fiduciary duty (Minor and Ingerslew, on behalf of WIT, v. the Albrights)



following reasons, defendants' motion is granted with respect to counts III, V, VII, IX and denied with respect to counts II, IV, VIII and XII.

## BACKGROUND[2]

In late 1997 the Albrights approached Ingerslew and Minor about joining their soon-to-be-formed company, WIT. In January 1998, the Albrights formed WIT, a closely-held Delaware corporation whose principal place of business is in Woodridge, Illinois. Each initially owned 50 per cent. On January 1, 1998, pursuant to separate Executive Stock Agreements, WIT issued shares to Ingerslew and Minor. Ingerslew received four per cent; and Minor received two per cent, with an additional two per cent to be issued upon consummation of WIT's acquisition of another company. On March 27, 1998, Minor became WIT's Chief Financial Officer. On December 21, 1998, Ingerslew became WIT's Chief Operating Officer. Both signed employment agreements providing for six months' severance payment in the event of termination without cause.

The relationship soured quickly. In May 1999, Albright informed Ingerslew and Minor that they were being put on "paid holiday." He proceeded to make corporate decisions without consulting them, including the sale of a plant and solicitation of additional investors. He also, without the knowledge or approval of the board of directors, transferred $340,000 from the corporation to himself and Ms. Albright. Ingerslew and Minor, at Albright's request, nonetheless continued working for WIT, without compensation. By August 1999 Albright had begun representing to others that Ingerslew and Minor were no longer COO and CFO, respectively, and had been reassigned to sales positions. In September 1999, Albright offered

---

[2]The following facts are drawn exclusively from the complaint. We are aware that defendants dispute many of them, but we accept them as true for purposes of this motion.

Minor $12,000 to leave WIT and relinquish his ownership. When Minor refused, Albright terminated him for unspecified cause. Shortly thereafter, Ingerslew resigned.

## DISCUSSION

When deciding a Rule 12(b)(6) motion, we must assume the truth of all well-pleaded factual allegations, making all possible inferences in the plaintiff's favor. Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund, 25 F.3d 417, 420 (7th Cir. 1994). We will dismiss a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Fed.R.Civ.P. 8(a)(2) only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Defendants divide their motion into five sections, each addressing different counts. We discuss each in turn.

### I. Ingerslew's Employment Agreement (Count II)

The complaint alleges that there was an agreement between Ingerslew and WIT. The writing attached as an exhibit to the complaint, however, only includes one signature, Ingerslew's. Defendants maintain that we must dismiss any claim based on this contract because it does not bear a signature on behalf of WIT.

This amounts to a factual dispute over whether there was a proper offer and acceptance. Federal pleading rules do not require plaintiffs to attach the contract. Lynch v. Maerklin of America, Inc., 1989 WL 82002 at *4 (N.D. Ill. Jul. 10, 1989). Attaching an unsigned copy does not plead the plaintiff out of court. The complaint adequately describes the nature of the agreement – the parties, the date, the subject matter and the relevant terms – to put defendants on notice of the claims against them. This is more than sufficient to

survive a motion to dismiss. Fed.R.Civ.P. 4(a).

## II. IBCA (Counts III and VII)

These counts allege that the Albrights' actions violated the IBCA by oppressing plaintiffs as minority shareholders. Defendants argue that such a claim must, by the statute's terms, be litigated in state court, and that the IBCA does not apply to WIT because it is a foreign corporation.

The former argument raises a question of subject matter jurisdiction – do we have the authority to resolve this dispute? – so we must address that first. The IBCA does state that actions "shall be commenced in the circuit court of the county in which either the registered office or principal office of the corporation is located." 805 ILCS 5/12.60(a). But this provision merely establishes the proper venue within the state court system. It does not attempt to create any form of exclusive state court jurisdiction. For that matter, our jurisdiction is prescribed by Congress, not the Illinois legislature. U.S. Const. Art III, §1. This suit is within our diversity jurisdiction. 28 U.S.C. §1332.

Defendants next argue that plaintiffs cannot state a claim under the IBCA because WIT is a Delaware corporation and its internal affairs are governed by Delaware law, not Illinois law. The internal affairs of a corporation are governed by the laws of the state of incorporation. *See* Kimmel v. Wirtz, 793 F.Supp. 818, 820 (N.D. Ill. 1992), *citing* 805 ILCS 5/13.10. These counts allege oppressive behavior by the controlling shareholders against minority owners. The relationships among officers and shareholders are fundamentally internal corporate affairs. Any gaps in Delaware's corporation statute are irrelevant, as is the fact that Delaware courts have cited Illinois law as analogous. Whatever remedy plaintiffs

may or may not have under Delaware law, the IBCA does not apply.

### III. Fiduciary Duty (Counts IV and VIII)

Defendants attack these counts on two fronts. First, they argue that most of these allegations arise from plaintiffs' status as employees, not as shareholders. Any such claims would be governed exclusively by the employment contracts, not corporate law. *See* Riblet Products Corp. v. Nagy, 683 A.2d 37, 40 (Del. 1996) (distinguishing between fiduciary duties to plaintiff *qua* shareholder and rights under employment contract). Second, they assert that the remaining allegations are really derivative of the corporation. Derivative claims do not state a claim for individual relief. *See* Bagdon v. Bridestone/Firestone, Inc., 916 F.2d 379, 383 (7th Cir. 1990).

We agree with both legal propositions, but they do not defeat the plaintiffs' claims here, at least not entirely. Delaware recognizes two alternate definitions of oppressive conduct by a majority stockholder: (1) a reasonable expectations standard, "the spoken or unspoken understandings on which the founders of a venture rely when commencing a venture;" and (2) "burdensome, harsh and wrongful conduct; a lack of probity and fair dealing in the affairs of a company to the prejudice to some of its members; or visible departure from the standards of fair dealing, and a violation of fair play on which every shareholder who entrusts his money to a company is entitled to rely." Litle v. Waters, 1992 WL 25758 at *7 (Del. Ch. Feb. 11, 1992) *citing with approval* Gimpel v. Bolstein, N.Y.S.2d 1014, 1018-19 (1984).[3]

---

[3]The Gimpel court developed the second definition because the current shareholders in that case were not the original shareholders, making reasonable expectations unworkable. 477 N.Y.S.2d at 1020. Because Litle did involve the original shareholders, the court discussed both standards. 1992 WL 25758 at *8. The Albrights, Minor and Ingerslew were all involved with WIT from the outset – the Albrights initially approached plaintiffs before the company was formally founded – so, as in Litle, either definition could apply.

In <u>Riblet</u>, on which defendants rely, the plaintiff did not allege that defendants froze out his stock interest, only that he was wrongfully terminated. 683 A.2d at 40. The complaint here alleges more than that WIT breached the employment agreements. Among other things, the Albrights completely stopped consulting with Minor and Ingerslew about the management of the corporation, including major decisions, such as disposing of an entire plant, that could materially affect plaintiffs' stock interests. They also attempted to coerce Minor into relinquishing his shares for a nominal sum. Based on representations made when they acquired their shares, Minor and Ingerslew could have reasonably expected to be informed about and involved in major corporate decisions. Freezing out minority investors who expected to be involved in management could also arguably violate fair play. Plaintiffs have sufficiently alleged oppressive conduct, completely apart from any issues governed by the employment agreement.

Turning to defendants' second argument, waste and misappropriation of corporate assets are harms against the corporation and must be brought derivatively. *See* <u>Elster v. American Airlines, Inc.</u>, 100 A.2d 219 (Del. Ch. 1953). Plaintiffs do exactly this in count XII. Delaware law, however, also recognizes the "special injury" exception to this rule, *id.* at 222, permitting a shareholder to litigate individually "if the wrong to the corporation inflicts a distinct and disproportionate injury on the investor." <u>Bagdon</u>, 916 F.2d at 383. The Albrights' attempts to solicit additional investors, which could have the consequence of diluting plaintiffs' shares, would affect all shareholders similarly. But the complaint alleges that this was part of a scheme by the Albrights to freeze Minor and Ingerslew out of the corporation. The same actions discussed above -- cutting minority shareholders out of

corporate decisions and attempting to coerce an unfair buyout -- are distinct injuries.

Plaintiffs may not recover under these counts for their termination from management. That is governed by their employment contracts. Nor may they recover for harms to the corporation that affect shareholders generally. That requires a derivative action. They do, however, state individual claims that the Albrights attempted to freeze them out. Whether plaintiffs can prove a broad-reaching attempt to exclude them is a question for another day. For now, their allegations suffice.

## IV. Implied Covenant of Good Faith and Fair Dealing (Counts V and IX)

Although Illinois law implies this in every contract, it does not create independent duties or give rise to an independent cause of action. *See* Echo, Inc. v. Whitson Co., 121 F.3d 1099, 1106 (7th Cir. 1997). It is used more as a canon of construction for interpreting a contract's other terms. *See id.* Plaintiffs have pled breaches of their employment contracts, and the implied covenant may play some role in evaluating those claims. But counts V and IX cannot stand as independent claims.

## V. Derivative Action (Count XII)

Plaintiffs have agreed to strike their claims for individual relief from this count but maintain the viability of their action on behalf of the corporation. As discussed above, because WIT is incorporated in Delaware, IBCA §12.56 does not apply. The complaint, nonetheless, alleges that the Albrights acted in their own interest and to the corporation's detriment. This adequately states a claim under Delaware law, which is enough for this count to survive the motion to dismiss. But if plaintiffs ultimately prevail, Delaware law will determine what relief is appropriate, not the IBCA.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted with respect to counts III, V, VII, IX and denied with respect to counts II, IV, VIII and XII.

_____
JAMES B. MORAN
Senior Judge, U. S. District Court

_____Nov. 27_____, 2001.