# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4493 | **DATE** | 2/4/2003 |
| **CASE TITLE** | Michael W. Minor etc. et al. Vs. Charles T. Albright, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the foregoing reasons, plaintiffs' motion for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | FEB 1 0 2003 date docketed | | 33 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAH | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL W. MINOR, individually and in his capacity of shareholder of WIT POSTAL LOGISTICS, INC., a Delaware corporation, NEILL D. INGERSLEW, individually and in his capacity of shareholder of WIT POSTAL LOGISTICS, INC., a Delaware corporation, and SHIRLEY A. INGERSLEW, <br><br> Plaintiffs. <br><br> vs. <br><br> CHARLES T. ALBRIGHT, JOYCE ALBRIGHT and WIT POSTAL LOGISTICS, INC., a Delaware corporation, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 01 C 4493 |

DOCKETED
FEB 10 2003

## MEMORANDUM OPINION AND ORDER

Plaintiffs Michael W. Minor (Minor), Neill D. Ingerslew (Neill) and Shirley A. Ingerslew (Shirley) filed this suit against defendants Charles T. Albright (Charles), Joyce Albright (Joyce) and WIT Postal Logistics, Inc. (WIT) alleging numerous breaches of contractual obligations and other legal duties. Shirley Ingerslew filed a motion for summary judgment as to count XI of the complaint, a breach of contract claim against WIT, alleging that WIT never repaid a loan that was due. For the following reasons, that motion is denied.

## BACKGROUND

In April 1999, Shirley agreed with Neill (her husband and WIT's president and chief operating officer) to make a payment of $115,000 to G.E. Capital (GE) on behalf of WIT, to facilitate the acquisition of Seward Motor Freight (Seward). After being notified of this,

Charles signed a commitment letter to GE on behalf of WIT. On April 16, 1999, following discussions with Neill, Shirley faxed to Charles a letter confirming the terms of the payment which stated:

> To: Charles T. Albright
>
> Shirley A. Ingerslew will loan to Wit Postal Logistics, Inc. $115,000 on April 16, 1999 for 60 days at an annual interest rate of 6% as a note payable on or after the SMF closing date and within the 60 day loan period. Shirley Ingerslew may convert the loan, interest and principal to WIT Postal Logistics, Inc. common stock at $1.25 per share. I would also request that the common stock purchased with this loan and the stock purchased on closing of SMF with an additional $85,000 be protected from dilution for at least 180 days after closing, or at least the same protection Neill has.
> Stock should be issued to Shirley A Ingerslew.

Neither Charles nor any other party from WIT contacted Shirley regarding the terms discussed in this letter. On May 12, 1999, Shirley called Joyce Albright to request that her WIT stock certificates be issued in her name only.

WIT's acquisition of Seward eventually failed and in August 1999, Shirley requested repayment of the money that she had paid to GE on behalf of WIT. Charles suggested that the payment be made over an extended period of time, as the result of WIT's financial problems. Shirley, however, demanded immediate payment. Charles told Shirley that WIT would repay the money and sent her two checks totaling $10,000. WIT claims that Charles and Shirley verbally agreed that the payments would be made at a rate of $5,000 per month. Charles, however, claims that WIT was making the payments for the convenience of Shirley, not because the initial payment was a loan. WIT also states that Shirley stated on October 12, 1999, that the money was intended to be used for the purchase of WIT stock.

On October 29, 1999, WIT sent Shirley an invoice for $10,000, stating: "Two payments

made in error to Shirley Ingerslew – confusion regarding loan vs. stock purchase." No further payments were made. WIT claims that upon learning that Shirley had never been issued the stock certificates, it caused her name to be registered in the stockholder register. Moreover, it claims that during the relevant period Shirley had the same rights as all other WIT stockholders.

## DISCUSSION

We grant a motion for summary judgment only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v Catrett, 477 U.S. 317, 322-23 (1986). We draw all reasonable inferences and view all admissible evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Only if there is insufficient evidence to support a jury verdict do we grant a motion for summary judgment. *Id.* at 248.

To prevail on a breach of contract claim, plaintiff must show the existence of a valid contract, performance of all conditions by the plaintiff, breach by the defendant, and damages as a consequence of this breach. *See* Shubert v. Federal Exp. Corp., 306 Ill.App.3d 1056, 1059, 715 N.E.2d 659, 661-662, 239 Ill.Dec. 905, 907 (Ill. App. 1st Dist. 1999).

A party named in a contract may, by acts or conduct following an oral agreement, indicate agreement with contract terms and become bound by them even if he has not signed a written contract. Landmark Properties, Inc. v. Architects International-Chicago, 172 Ill.App.3d 379, 383, 526 N.E.2d 603, 606, 122 Ill.Dec. 344, 347 (Ill. App. 1st Dist. 1988). It must be clear, however, that the party against whom the terms are to be enforced acted in response to the specific contract in question. *Id.*

Shirley negotiated the loan with her husband Neill. While WIT claims that these negotiations were beyond the scope of Neill's authority and that it represents a conflict of interest, it will still be bound by the terms of the contract if it agreed to the contract. Nobody from WIT contested the terms of Shirley's April 16, 1999, letter. This silence alone would not be enough to bind WIT to the terms contained in the letter. WIT, however, used the money paid by Shirley to facilitate the (ultimately failed) transaction with GE for the purchase of Seward. WIT cannot use the funds for its advantage, fail to contest the terms contained in Shirley's letter and then argue that it is not bound by the terms. Here, WIT's conduct is sufficient to constitute acceptance of the contract terms.

The ultimate issue is whether the contract was for a loan or a stock purchase and whether WIT performed its part of the contract. We find that there are factual determinations surrounding this issue that cannot be made at this time, and summary judgment is therefore improper.

The April 16, 1999, letter seems to be a loan agreement reserving for Shirley the option of converting the loaned funds to stock in WIT. This construction of the letter is not altogether clear, however, as the letter seems to assume that Shirley will be issued stock certificates. Subsequent to sending the funds to GE and this letter to WIT, Shirley contacted WIT regarding her stock certificates. While she denies that this was for the purpose of exercising her contractual option, WIT disagrees, and this dispute is a question of fact.[1] If Shirley had in fact exercised her option, WIT might be able to show that it performed its part of the

---

[1] Shirley argues that her telephone contact with Joyce cannot serve as the exercise of her option because Delaware law requires that subscriptions be made in writing. It is far from clear that the April 16, 1999, letter creates a "subscription," as defined by Delaware law. Moreover, while this may invalidate the transaction, it would not necessarily mean that Shirley intended that the money be a loan.

contract by converting Shirley's money into WIT stock. WIT argues that Shirley had rights equal to those of all stockholders, that she was eventually listed in the register and that it remains willing to issue her the stock certificates. While WIT's conduct may prove insufficient to perform its part of the contract, we cannot make such a legal determination at this time. Finally, while WIT did begin to repay the money to Shirley, Charles claims that he was never repaying the money because he considered Shirley's money to be a loan. and that she always intended for the money to be used as a purchase of WIT stock. Whether this was truly the case is a factual determination that must not be made at the summary judgment stage.

While it appears that WIT is bound by the terms of the April 16, 1999 letter, its terms are far from clear. Factual disputes remain as to whether Shirley exercised an option to buy stock in WIT and whether WIT performed its part of the contract.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is denied.

*James B. Moran*
JAMES B. MORAN
Senior Judge, U. S. District Court

Feb 4, 2003.